T.C. Memo. 2011-99

UNITED STATES TAX COURT

DONALD T. AND MARLENE B. ROBINSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20544-08.                    Filed May 5, 2011.

Donald T. and Marlene B. Robinson, pro sese.

<u>Jason M. Kuratnick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined deficiencies, additions
to tax for failure to file timely pursuant to section 6651(a)(1),
and accuracy-related penalties pursuant to section 6662(a) with
respect to petitioners' Federal income tax as follows:[1]

---

[1]All section references are to the Internal Revenue Code in
(continued...)

|       |            | Addition to Tax | Penalty      |
| Year  | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|-------|------------|-----------------|--------------|
| 2004  | $7,965     | $645.00         | $1,593.00    |
| 2005  | 9,634      | 940.75          | 1,923.80     |

The issues we must decide are:  (1) Whether the burden of proof has shifted to respondent pursuant to section 7491(a); (2) whether petitioner husband was an employee or an independent contractor of Temple University; (3) whether petitioners are entitled to deduct business expenses reported on their returns on Schedules C, Profit or Loss From Business; (4) whether petitioners are entitled to deduct employee business and miscellaneous expenses reported on their returns on Schedules A, Itemized Deductions; (5) whether petitioners are liable for the additions to tax under section 6651(a)(1) for failure to file timely returns; and (6) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a).

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found accordingly.  At the time they filed their petition, petitioners were residents of Pennsylvania. Petitioners are husband and wife (hereinafter referred to

_____

[1](...continued)
effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

individually as Mr. Robinson or Mrs. Robinson, respectively) who filed joint tax returns for their 2004 and 2005 tax years (the years in issue).

During the years in issue Mr. Robinson was employed as a full-time professor at Rowan University, where he taught classes related to criminal justice. Over the past several decades, Mr. Robinson has earned income periodically from other activities such as writing training curriculums for police officers and providing expert testimony. Since 1985 a large part of his outside work has included teaching classes at Temple University (Temple) and preparing curriculums for Temple's training programs.

Although respondent sometimes characterized Mr. Robinson's position at Temple as adjunct professor, Mr. Robinson was technically a vocational instructor. The courses he taught were not part of the university's regular curriculum; rather, they were part of its Criminal Justice Training Program (CJTP). The courses offered through the CJTP were not offered for college credit to regular Temple students. Instead, the students Mr. Robinson taught were usually police officers or other criminal justice personnel enrolled in the CJTP's Municipal Police Academy. The students usually were assigned to the CJTP's Municipal Police Academy by a Pennsylvania State law enforcement training commission such as the Pennsylvania Commission on Crime

and Delinquency or the Municipal Police Officers' Education and Training Commission. In most cases, Temple operated the courses under a contract billed to the Commonwealth of Pennsylvania.

Mr. Robinson was not responsible for managing the enrollment in his classes, and Temple provided him with classroom space. Mr. Robinson bore no risk of loss from underenrollment in the courses, and he had no possibility of earning a profit in excess of his agreed compensation from Temple. The curricula he wrote were prepared at the direction of Temple, which set the deadline for his finished product. The topics to be covered in the curricula were conveyed to him by Temple, but frequently they were mandated by the State commissions that contracted with Temple. Sometimes Mr. Robinson was responsible for only a portion of the curriculum; at other times he wrote or edited the entire curriculum. The completed curricula became the property of Temple.

Mr. Robinson was paid an hourly rate for teaching and a flat rate for updating curricula.[2] Before 2003 Mr. Robinson earned

---

[2]Although the documents the CJTP submitted to Temple's payroll department to report compensation due to Mr. Robinson provide numbers of hours and hourly rates for his work updating curricula, those documents are inconsistent with the "Curriculum Development Proposal" also in the record, which provides a flat fee for updating curriculums. Because the documents submitted to the payroll department are generic, because the "Curriculum Development Proposal" stated the full amount Mr. Robinson would be paid before the time he had completed the task, and because the "Curriculum Development Proposal" provides significantly more
(continued...)

substantial income from teaching and updating curricula at Temple, sometimes as much as $35,000 per year. However, in recent years he has not been hired as often by Temple. During 2004 Mr. Robinson received $1,295 from Temple for teaching 8 days during the Municipal Police Academy, which met from May to October, and $500 for updating one curriculum. His teaching services and his curriculum updating services were engaged under separate agreements entered at different times. During 2005 Mr. Robinson received $4,145 from Temple for teaching portions of three different courses, and he received $900 for updating curricula. His 2005 income from Temple was paid pursuant to four separate agreements between Mr. Robinson and Temple.

From 1985 until 1996 Temple treated Mr. Robinson as an independent contractor and reported his income on Forms 1099-MISC, Miscellaneous Income.[3] Beginning around 1996, Temple began to treat Mr. Robinson as an employee and report his income on Forms W-2, Wage and Tax Statement. Mr. Robinson requested that Temple treat him as an independent contractor, but Temple refused. Nonetheless, petitioners continued to report Mr. Robinson's income on their Schedule C as if he were an

---

[2](...continued)
detail about the agreement between the parties, we conclude that Mr. Robinson was paid a flat fee for his work updating curricula.

[3]Petitioner testified that Temple used to report his income on Form 1099-C, but we assume he meant Form 1099-MISC, Miscellaneous Income, and not Form 1099-C, Cancellation of Debt.

independent contractor.  During the years in issue, Temple treated Mr. Robinson as a part-time employee and issued him Forms W-2.

Temple did not provide Mr. Robinson with an office, and he completed his work for Temple out of an office in his home.  His office at home occupied 200 square feet of his 3,500-square-foot home.  During the years in issue his office was not used by anyone else except to pass through it.

During the years in issue Mrs. Robinson was employed as the general manager for Influence Marketing, a wholly owned subsidiary of QVC, Inc.  As general manager, she was in charge of two operations:  One in nearby Pennsylvania and one at the Mall of America in Minnesota.  Mrs. Robinson's operations are retail locations and also attract tourists who receive tours of the QVC facility.  Additionally, the operation in Pennsylvania has an audience venue that hosts a variety of events including interviews with celebrities who endorse QVC products.  Mrs. Robinson was responsible for the profitability of both locations and had control over "strategic initiatives".

Mrs. Robinson was eligible for reimbursement of her employee-related expenses.  She made a number of trips to visit the Mall of America in Minnesota, and each of those trips was reimbursed in full by Influence Marketing.  In total, she was

reimbursed for expenses of $9,886.10 and $8,436.23 during petitioners' 2004 and 2005 tax years, respectively.

Petitioners were involved in a prior dispute before the Tax Court regarding whether Mr. Robinson qualified as an independent contractor when he performed services for Temple. That dispute ended when the Internal Revenue Service (IRS) stipulated that petitioners had no deficiency for the year there in issue. We take judicial notice of the stipulated decision entered in the case at docket No. 10791-04S on November 2, 2004.

Petitioners filed late tax returns for the years in issue. The IRS did not receive petitioners' 2004 tax return until April 19, 2007, and it did not receive their 2005 tax return until June 13, 2007.

On a Schedule C attached to their 2004 tax return, petitioners reported income of $1,795 and expenses totaling $25,164 relating to Mr. Robinson's services to Temple. On a Schedule A attached to their return, petitioners also claimed a miscellaneous deduction of $23,597, in excess of the 2-percent limitation. The largest portion of that deduction was from employee business expenses Mrs. Robinson incurred in her employment as a manager with Influence Marketing. Mr. Robinson also claimed deductions for employee business expenses from his position as a professor at Rowan University.

Petitioners reported similar expenses on their 2005 tax return. On their Schedule C for 2005, petitioners reported income of $4,045 and expenses totaling $26,826 from Mr. Robinson's work at Temple. On their Schedule A, petitioners claimed a miscellaneous deduction of $24,030, in excess of the 2-percent limitation. Most of the deductions on their Schedule A were from unreimbursed employee business expenses petitioners claimed from both of their full-time jobs.

On November 14 and December 12, 2007, respondent mailed letters to petitioners notifying them that respondent was examining their 2004 and 2005 tax returns. During the examination petitioners did not provide any documentation substantiating their reported expenses. Instead, Mr. Robinson repeatedly insisted throughout the examination that the examining officer needed to first separately consider whether he qualified as an independent contractor with regard to the services he performed for Temple.

On June 3, 2008, respondent issued petitioners a notice of deficiency for the years in issue. In the notice of deficiency, respondent asserted that: (1) Mr. Robinson was an employee of Temple and not an independent contractor; (2) petitioners were not entitled to deduct the Schedule C expenses reported on their returns; and (3) petitioners were not entitled to deduct the

employee business and miscellaneous expenses reported on their returns.

Petitioners timely filed a petition seeking redetermination of the deficiencies, additions to tax, and penalties.

OPINION

I.   Whether the Burden of Proof Has Shifted Under Section 7491(a)

We consider as a preliminary matter petitioners' contention that the burden of proof has shifted to respondent pursuant to section 7491(a).  Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if:  (1) The taxpayer introduces credible evidence with respect to such issue; and (2) the taxpayer satisfies certain other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings.  Sec. 7491(a)(2); see also Rule 142(a)(2).  Taxpayers bear the burden of proving that they have met the requirements of section 7491(a).  Rolfs v. Commissioner, 135 T.C. 471, 483 (2010).

Petitioners contend that they have satisfied the requirements of section 7491(a) and that the burden of proof as

to all factual issues affecting the deficiencies in their taxes should be shifted to respondent.  Respondent contends that the burden should not shift because petitioners have not substantiated their claimed expenses and did not cooperate with respondent's requests for documentation.  We agree with respondent that the burden of proof remains with petitioners because, as we explain below, we conclude that petitioners have failed to substantiate their reported expenses.

II.  <u>Whether Mr. Robinson Qualified as an Employee or an Independent Contractor When He Rendered Services to Temple University</u>

Whether a taxpayer is an independent contractor or an employee is decided by applying common law principles to the specific facts and circumstances of the case.  <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 323-325 (1992); <u>Weber v. Commissioner</u>, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).  For guidance on whether a worker qualifies as an employee under common law principles, courts have generally looked to the Restatement of Agency.  <u>Cmty. for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 752 n.31 (1989).  Relevant factors include:  (1) The degree of control exercised by the principal; (2) which party invests in the work facilities used by the worker; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6)

the permanency of the relationship; (7) whether the worker is paid by the job or by the time; (8) the relationship the parties believed they were creating; and (9) the provision of employee benefits. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); DeTorres v. Commissioner, T.C. Memo. 1993-161; see also 1 Restatement, Agency 2d, sec. 220 (1958). We consider all of the facts and circumstances of each case, and no single factor is dispositive. Ewens & Miller, Inc. v. Commissioner, supra at 270.

Respondent argues that Mr. Robinson's working arrangement with Temple is similar to the taxpayers' positions as adjunct professors in Potter v. Commissioner, T.C. Memo. 1994-356, and Bilenas v. Commissioner, T.C. Memo. 1983-661, and that Mr. Robinson similarly should be treated as a part-time employee. In both of those cases the taxpayers were hired by their respective universities as adjunct professors to teach semester-long classes on a class-by-class basis. The schools determined which courses those adjunct professors would teach and where they would teach them. The schools managed enrollment in the courses and provided classroom space. In both cases the universities treated the relationship as an employer-employee relationship.

However, certain aspects of the instant case are more similar to Reece v. Commissioner, T.C. Memo. 1992-335, in which we held that the taxpayer's position as an instructor for

seminars he conducted as part of a university's executive education program was that of an independent contractor, not an employee. In <u>Reece</u>, the taxpayer was employed by the university as a full-time professor, and the taxpayer conducted corporate seminar services to multiple clients in his spare time. Some of the seminars he designed and led were taught through the executive education program at the university, in classrooms supplied by the university. The seminars led by the taxpayer were short and were not offered for college credit. The university considered the taxpayer's seminar work separate from his work as a professor and treated him, like its other seminar instructors, as an independent contractor.

The principal's degree of control over the details of the taxpayer's work is the most important factor in determining whether a common law employment relationship exists. See <u>Clackamas Gastroenterology Associates, P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Weber v. Commissioner</u>, <u>supra</u> at 387. In an employer-employee relationship the principal must have the right to control not only the result of the employee's work but also the means and method used to accomplish that result. <u>Packard v. Commissioner</u>, 63 T.C. 621, 629 (1975); <u>Youngs v. Commissioner</u>, T.C. Memo. 1995-94, affd. without published opinion 98 F.3d 1348 (9th Cir. 1996). The degree of control necessary to find employee status varies according to the nature of the services

provided.  <u>Weber v. Commissioner</u>, <u>supra</u> at 387.  Where the nature of the work is more independent, a lesser degree of control by the principal may still result in a finding of an employer-employee relationship.  <u>Potter v. Commissioner</u>, <u>supra</u>; <u>Reece v. Commissioner</u>, <u>supra</u>.

In each of <u>Potter</u>, <u>Bilenas</u>, and <u>Reece</u>, we concluded that the taxpayer's position as a professor (whether adjunct or otherwise) required a certain degree of independence.  Yet in <u>Potter</u> and <u>Bilenas</u> we concluded that the taxpayer's work as an adjunct professor nonetheless resulted in an employer-employee relationship.  In <u>Reece</u> we stated that although the taxpayer's full-time job as a professor was no doubt that of an employee despite the degree of independence inherent in that position, the circumstances of the case did not warrant extending that relationship to cover the taxpayer's services as a seminar instructor for the university's executive education program.

The amount of control Temple exercised over Mr. Robinson in his work as a vocational instructor is somewhere between that exercised over the adjunct professors in <u>Potter</u> and <u>Bilenas</u> and that exercised over the seminar instructor in <u>Reece</u>.  In both <u>Potter</u> and <u>Bilenas</u> the university mandated the courses the respective adjunct professors were to teach, and in <u>Bilenas</u> the school even selected the textbooks and syllabuses he was to use. In contrast, in <u>Reece</u> the taxpayer wrote his own course materials

and syllabuses even though those materials were published by the school and were not permitted to be sold separately. Mr. Robinson prepares the curricula for the courses he teaches. Sometimes he is in charge of writing and editing the entire curriculum; at other times he writes only a portion of it. However, Mr. Robinson does not select the topics to cover in the curricula; they are chosen by the State police commissions that pay Temple. As in Reece, Temple publishes the work produced by Mr. Robinson and distributes it with the course materials. Accordingly, Temple exercises less control over Mr. Robinson's teaching work than the universities in Potter and Bilenas, but more than the university in Reece.

A significant distinction between the instant case and the Potter, Bilenas, and Reece cases is that in the instant case part of Mr. Robinson's work for Temple during the years in issue consisted of writing and updating curricula. His work on the curricula was separate and distinct from his teaching, and he was compensated for that work by the job. Although the taxpayer in Reece wrote his own curricula, he was not compensated for doing so and wrote the curricula only to facilitate his teaching. The only control Temple asserted over Mr. Robinson's work updating curricula was to set the deadlines for his work and convey the general topics he was to cover. Temple did not exercise control over how Mr. Robinson completed the curricula.

The control test suggests that Mr. Robinson was an independent contractor.  See Packard v. Commissioner, supra at 629; see also Bernstein v. Universal Pictures, Inc., 517 F.2d 976, 980 (2d Cir. 1975) (although composers contracted for a specific output, they worked at their own pace at home and were not subject to day-to-day supervision, suggesting independent contractor status because the principal had no right to control the manner of performance).

As to the second factor, Temple provided the facilities where Mr. Robinson taught but did not provide him an office or any other space in which to write and update curricula.

The third factor asks whether the individual had the opportunity for profit or loss.  It is true, as respondent asserts, that Mr. Robinson's opportunity for profit or loss did not depend upon the level of enrollment in his classes.  However, petitioners contend that the opportunity for profit or loss in Mr. Robinson's job as a police trainer did not consist of an opportunity for profit or loss in individual courses he taught but rather in how many courses he was hired to teach each year. Mr. Robinson testified that although most of his outside income has come from Temple, he has also received compensation from providing expert testimony, conducting other training, and curriculum writing.  In Reece the taxpayer likewise provided services as a seminar instructor both to the university and to

other organizations.  Unlike the taxpayer in <u>Reece</u>, Mr. Robinson recently has not been successful at soliciting other buyers for his services.  However, the fact that he has not been successful does not change the nature of his business.

The fourth factor requires us to consider whether the principal could discharge the individual.  Because petitioners did not provide copies of Mr. Robinson's contracts with Temple, it is difficult to assess the discharge authority factor. However, the record does contain several letters from Temple to Mr. Robinson that suggest he was hired for individual jobs several times each year.  During 2004 he was separately hired to teach eight classes and to update curricula, and during 2005 Temple entered into four separate agreements with Mr. Robinson. Being repeatedly asked to perform discrete tasks under varying payment terms suggests that if Temple had not satisfied with Mr. Robinson's performance, its recourse would have been to not hire him for any more projects, rather than to discharge him.

The fifth factor asks whether the work performed by the taxpayer was part of the principal's regular business.  Temple is primarily a university and not a police training academy. Although teaching is part of its business as a university, the type of teaching that is central to its mission is teaching for-credit courses completed by regularly enrolled students. Teaching noncredit courses to police officers through contracts

with the Commonwealth of Pennsylvania is not an essential part of Temple's regular business.

The sixth factor requires us to consider the permanence of Mr. Robinson's relationship with Temple. Although he has been involved in the CJTP for many years, Mr. Robinson's duties teaching and writing curricula have fluctuated throughout that period and recently have been very minimal. During 2004, for instance, Mr. Robinson taught only 8 days and updated one curriculum. Moreover, each of those assignments was a separate engagement with Temple governed by different payment terms. During 2005 he engaged in four separate agreements with Temple for remuneration totaling only $5,045. His position at Temple is significantly less permanent than that of the taxpayer in Potter, who had taught semester-long courses for many consecutive years. Again, Mr. Robinson's situation is more similar to that of the taxpayer in Reece, who had been teaching seminars through the university's executive education program for many years but taught multiple small seminars for 12 to 25 days each year.

The seventh factor asks whether the taxpayer was paid by the job or by the time. Mr. Robinson was paid an hourly wage for his teaching duties, but he was paid a set fee for the curricula he wrote. The hourly wage he received for teaching is consistent with an employer-employee relationship, but the set fee for writing curricula suggests an independent contractor

relationship.  See C.C. Eastern, Inc. v. NLRB, 60 F.3d 855, 859 (D.C. Cir. 1995) (that drivers were paid by the job suggested independent contractor status); Marco v. Accent Publg. Co., 969 F.2d 1547, 1550 (3d Cir. 1992) (that a photographer was paid by the job suggested independent contractor status); James v. Commissioner, 25 T.C. 1296, 1300 (1956) (that a doctor was given an annual salary and was not paid by the job suggested employee status).

The eighth factor examines the relationship the parties believed they were creating.  Since 1996 Temple has issued Mr. Robinson Forms W-2, and it denied his requests to issue him Forms 1099-MISC.  From Temple's perspective, Mr. Robinson was a part-time employee.  Temple's treatment of Mr. Robinson as an employee is different from the taxpayer's treatment in Reece, where the university did not consider the taxpayer's services as a seminar instructor to be within an employment relationship; but it is consistent with the way the universities treated the adjunct professors in Potter and Bilenas.

The ninth factor asks whether the alleged employer provided employee benefits.  Mr. Robinson received no employee benefits from Temple.

Considering all of the foregoing facts and circumstances and applying common law principles, we conclude that Mr. Robinson was an independent contractor at Temple during the years in issue.

III. Whether Petitioners Are Entitled to the Deductions They Claimed for Each Year

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to the deductions claimed. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Section 162(a) permits "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". To be deductible, ordinary and necessary expenses must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Additionally, section 212 generally allows the deduction of ordinary and necessary expenses paid or incurred during the tax year for the production or collection of income. Sec. 1.212-1(d), Income Tax Regs. The deduction for such expenses must be reasonable in amount and bear a reasonable and proximate relationship to the production or collection of taxable income. Id. However, a taxpayer may not deduct personal expenses. Sec. 262(a).

Generally, a taxpayer must keep records sufficient to establish the amounts of the items reported on his Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude

in substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We generally will not estimate a deductible expense, however, unless the taxpayer presents sufficient evidence to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the Cohan doctrine for certain categories of expenses. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Generally, a deduction is disallowed for travel expenses, meals and entertainment, and listed property unless the taxpayer properly substantiates: (1) The amount of the expense; (2) the time and place of the expense; (3) the business purpose; and (4) in the case of meals and entertainment, the business relationship between the taxpayer and the persons being entertained. Sec. 274(d). Listed property includes passenger automobiles, any type of property generally used for entertainment or recreation, any computer or peripheral equipment, and any cellular phone or other similar telecommunications equipment.[4] Sec. 280F(d)(4). Generally, deductions for expenses subject to the strict

---

[4]Sec. 280F(d)(4) was amended by the Small Business Jobs Act of 2010, Pub. L. 111-240, sec. 2043(a), 124 Stat. 2560, which removed cellular phones and other similar telecommunications equipment from "listed property". However, that amendment is effective only for tax years beginning after Dec. 31, 2009. Id. sec. 2043(b).

substantiation requirements of section 274(d) must be disallowed in full unless the taxpayer satisfies every element of those requirements. Sanford v. Commissioner, supra at 827-828; Larson v. Commissioner, T.C. Memo. 2008-187; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Deductions for listed property that is used both personally and in the taxpayer's business are disallowed unless a taxpayer establishes the amount of business use of the property. Kinney v. Commissioner, T.C. Memo. 2008-287; Olsen v. Commissioner, T.C. Memo. 2002-42, affd. 54 Fed. Appx. 479 (9th Cir. 2003); sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Taxpayers may substantiate their deductions by either adequate records or sufficient evidence that corroborates the taxpayer's own statement. Sec. 274(d). To satisfy the adequate records requirement, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Larson v. Commissioner, supra; sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). A contemporaneous log is not required, but corroborative evidence used to support a taxpayer's reconstruction of the expenditure "'must have a high degree of probative value to elevate such statement'" to the level of credibility of a contemporaneous record. Larson v.

Commissioner, supra (quoting section 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985)).

In the absence of adequate records, a taxpayer alternatively may establish an element of an expenditure by "'his own statement, whether written or oral, containing specific information in detail as to such element'" and by "'other corroborative evidence sufficient to establish such element.'" Id. quoting (section 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985)). Even if an expense would otherwise be deductible, the deduction may still be denied if there is insufficient substantiation to support it. See sec. 1.274- 5T(a), Temporary Income Tax Regs., supra. We do not estimate under the Cohan doctrine expenses that are subject to the requirements of section 274(d). Sanford v. Commissioner, supra at 827; Larson v. Commissioner, supra.

A.   Schedule C Expenses for Mr. Robinson

For the years in issue petitioners reported the following expenses for Mr. Robinson on a Schedule C for each year:

| Expense | 2004 | 2005 |
|---|---|---|
| Business use of home | $438 | $457 |
| Office expense | 4,222 | 5,128 |
| Repairs and maintenance | 2,760 | 2,822 |
| Supplies | 2,943 | 2,788 |
| Utilities | 3,356 | 3,765 |
| Car and truck | 7,219 | 7,123 |
| Travel | 1,003 | 1,250 |
| Meals and entertainment | 443 | 393 |
| Other expenses | 2,780 | 3,100 |
| Total | 25,164 | 26,826 |

Most of petitioners' claimed expenses relate to Mr. Robinson's use of an office in his home. Section 280A generally prohibits the deduction of the costs of a taxpayer's residence. However, section 280A(c)(1) permits a deduction for the allocable portion of a residence that is used exclusively and on a regular basis as a taxpayer's principal place of business. To meet the regular basis test under section 280A(c)(1), the business use must be more than occasional or incidental. Jackson v. Commissioner, 76 T.C. 696, 700 (1981). It must be continuous, ongoing, or recurring. Uphus v. Commissioner, T.C. Memo. 1994-71.

Petitioners offered no testimony or other evidence regarding the amount of time Mr. Robinson spent doing work in the office in his home. Mr. Robinson had a full-time job at Rowan University during the years in issue, and he completed only minimal work for Temple during each year. The parties stipulated that Mr. Robinson's work for Temple was completed out of the office in his home, but the amount of work he was required to complete was so minimal that it does not allow us to conclude, in the absence of any other evidence, that Mr. Robinson used the office in his home on a regular basis. Because petitioners bear the burden of proving that Mr. Robinson regularly used the office in his home during the years in issue and because they offered no evidence to prove such regular use, we conclude that petitioners have failed

to show that they are entitled to deduct any expenses related to Mr. Robinson's use of an office in his home during the years in issue. Accordingly, because petitioners may not deduct such expenses, we sustain respondent's disallowance of all the expense deductions petitioners claimed for the business use of their home, office expenses, repairs and maintenance, supplies, and utilities, all of which are related to Mr. Robinson's use of an office in petitioners' home, except for cellular phone and computer expenses, which we treat separately.

Cellular phones and computers are listed property under section 280F(d)(4), and therefore related expenses are subject to strict substantiation under section 274(d). Petitioners offered no testimony or other evidence regarding the business purpose of Mr. Robinson's cellular phone or Apple computer. Accordingly, petitioners have failed in their burden of proof, and we sustain respondent's disallowance of petitioners' cellular phone and computer expense deductions.

For the years in issue, petitioners claimed car and truck expenses for Mr. Robinson's 2004 Chrysler Pacifica (Pacifica). Passenger automobiles are listed property under section 280F(d)(4), and expenses associated with their purported business use therefore are subject to the heightened substantiation requirements of section 274(d).

For 2004 petitioners reported car and truck expenses totaling $7,219 for Mr. Robinson's Pacifica. To substantiate those expenses, petitioners provided canceled checks and invoices from Mr. Robinson's payments to Chrysler Financial for the Pacifica, totaling $6,443.67, and miscellaneous receipts from mechanics, body shops, insurance companies, and tolls, totaling $3,014.10. On the Schedule C for Mr. Robinson's business, petitioners reported that Mr. Robinson drove the Pacifica 18,000 miles for business, 3,200 for commuting, and 14,800 for other purposes. However, petitioners did not provide a log documenting Mr. Robinson's business trips, nor did they otherwise explain how he managed to drive 18,000 miles for his business even though he taught class only 8 days during 2004.

For 2005 petitioners claimed car and truck expenses of $7,123 for Mr. Robinson's Pacifica. Petitioners similarly provided invoices substantiating most of Mr. Robinson's payments to Chrysler Financial for the Pacifica, totaling $5,902.78 during 2005. Petitioners reported on the Schedule C for Mr. Robinson's business that Mr. Robinson drove the Pacifica 16,500 miles for business, zero miles for commuting, and 16,500 miles for other purposes during 2005. As with the expenses for 2004, Mr. Robinson did not supply a log or other means to substantiate the purposes of his trips or explain how he calculated his miles. Petitioners provided no other documentation of Mr. Robinson's car

and truck expenses for 2005, and it is unclear from the record how he arrived at total expenses of $7,123.

Petitioners offered no testimony or other evidence to explain how they calculated which automobile expenses were related to Mr. Robinson's business and which were not. The very round numbers of miles reported on the Schedules C and the overall lack of any records suggesting how the expenses were allocated significantly detract from the credibility of the expenses reported. We conclude that petitioners have failed in their burden of satisfying the strict substantiation requirements of section 274(d), and we therefore sustain respondent's disallowance of petitioners' car and truck expense deductions.

Petitioners claimed deductions for additional travel expenses, as well as meal and entertainment expenses, related to Mr. Robinson's business during the years in issue. However, they provided no documentation or testimony to support their claimed travel expenses and meal and entertainment expenses. Accordingly, petitioners have failed in their burden of proof, and we therefore sustain respondent's disallowance of deductions for those expenses.

Finally, petitioners claimed deductions for "other expenses" on their Schedules C of $2,780 and $3,100 for their 2004 and 2005 tax years, respectively. Those expenses reflect the costs of publications Mr. Robinson purchased during the years in issue.

Petitioners did not provide any receipts or invoices to substantiate the expenses they deducted for publications for 2004. Instead, petitioners provided only canceled checks and credit card statements, which do not give any details about the items Mr. Robinson purchased.

Petitioners did provide receipts to substantiate Mr. Robinson's expenses for publications for 2005. The receipts they provided show that the "publications" Mr. Robinson purchased included: Laugh Out Loud Knock-Knock Jokes; several books about midwives; several television shows on DVD including Gilmore Girls, Arrested Development, and Friends; several books about origami; several books on the architect Frank Lloyd Wright; a Harry Potter book; Witchcraze; Teen Idol; In Her Shoes; A Christmas Carol; Top Gun; Mary Poppins; 501 Must-See Movies; Good Will Hunting; The Iliad; The Odyssey; subscriptions to People magazine, several books on logic, unknown purchases totaling $68.74 at LexisNexis, and various other publications, some of which were not listed on the receipts, and some of which the parties stipulated were not related to Mr. Robinson's business.

Although Mr. Robinson admitted during his testimony that many of the books listed on the receipts for 2005 were unrelated to his business, petitioners argued that it should not matter because the receipts and statements they supplied total approximately $3,900, and they deducted only $2,780 in expenses.

However, petitioners appear to have erred in those calculations; we find that the sum of the receipts they provided falls well short of the expense deduction they claimed. The sum of all the purchases listed on the receipts is $2,201.06, yet petitioners deducted $3,100 on their 2005 Schedule C.

Moreover, although we have examined all of the receipts petitioners provided, we did not find even a single receipt that would have justified deducting the item's cost as a business expense. Most of the receipts were clearly unrelated to Mr. Robinson's business. The few that might conceivably have been related to his business as a police instructor (receipts from LexisNexis and the Pennsylvania State Bookstore) did not list the items purchased, and Mr. Robinson did not testify or provide other evidence about how they were related to his business. During cross-examination Mr. Robinson attempted to justify some of the expenses that were apparently unrelated to his business. For instance, he contended that a subscription to People magazine was a business expense because it contained articles on current events, that purchases of books on midwifery were business expenses because he sometimes taught classes on ethics, and that purchases of books about Frank Lloyd Wright were business expenses because the architect had been involved in a crime. We are not persuaded by Mr. Robinson's testimony that such expenses were related to his business. Accordingly, we conclude

that petitioners have failed to substantiate any of the publication expenses they deducted on their Schedules C, and we therefore sustain respondent's disallowance of those expenses.

B.    Schedule A Deductions for Mrs. Robinson's Expenses

Pursuant to section 162(a), a taxpayer is entitled to deduct all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. However, employees cannot deduct such expenses to the extent that employees are entitled to reimbursement from their employers for expenditures related to their status as employees. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 7 (1982). The deduction for an employee's unreimbursed business expenses under section 162 is claimed on Form 2106, Employee Business Expenses, and included in the miscellaneous itemized deductions claimed on Form 1040, U.S. Individual Income Tax Return, Schedule A. An individual performing services as an employee may deduct miscellaneous itemized deductions incurred in the performance of services as an employee only to the extent such expenses exceed 2 percent of the individual's adjusted gross income. Sec. 67(a). Expenses incurred in the performance of services as an employee are to be reported as required by the regulations promulgated under section 162. See sec. 1.162-17(a), Income Tax Regs. To satisfy the requirements of section 162(a), an expense must be

ordinary and necessary and have the requisite relationship to the taxpayer's business.  The taxpayer bears the burden of proving that the claimed expenses were ordinary and necessary under section 162.  The employee must show the relationship between the expenditures and the employment.  See Rosemann v. Commissioner, T.C. Memo. 2009-185; Colvin v. Commissioner, T.C. Memo. 2007-157, affd. 285 Fed. Appx. 157 (5th Cir. 2008); Evans v. Commissioner, T.C. Memo. 1974-267, affd. in part and revd. in part on another ground 557 F.2d 1095 (5th Cir. 1977).

Petitioners claimed on their tax returns for the years in issue that Mrs. Robinson was eligible for the following unreimbursed employee business expense deductions:

| Expense | 2004 | 2005 |
|---|---|---|
| Vehicle expense | $337 | $444 |
| Parking fees, tolls, and transportation | 678 | 24,876 |
| Travel expenses | 22,785 | 765 |
| Other business expenses | 763 | 3,915 |
| Meals and entertainment | 3,258 | --- |
| Total | 27,821 | 30,000 |

Mrs. Robinson was the sole driver of petitioners' 2002 Chrysler Sebring (Sebring) during the years in issue.  On their Schedule A for 2004 petitioners reported that Mrs. Robinson drove 22,000 miles, 5,000 of which were for business.   They used the corresponding percentage, 23 percent, to calculate the share of Mrs. Robinson's total reported gasoline, oil, repairs, and vehicle insurance expenses of $1,422 that should be allocated to

Mrs. Robinson's unreimbursed employee business expenses. In total, petitioners reported $337 as Mrs. Robinson's unreimbursed employee business vehicle expenses during 2004. Petitioners did not supply a log or other means to substantiate the business purposes of Mrs. Robinson's trips in the Sebring, nor did they explain the purposes of such trips during their testimony.

For 2005 petitioners made the same calculation as for 2004, reporting that Mrs. Robinson traveled 23,000 miles in the Sebring, 5,000 of which were for business. For 2005 they claimed $2,044 in expenses for gasoline, oil, repairs, and vehicle insurance, and they reported an unreimbursed employee business vehicle expense of $444. Petitioners provided no evidence or testimony to substantiate the business purpose of the miles they reported on their Schedule A.

As stated above, passenger automobiles are listed property and expenses associated with their purported business use are subject to the heightened substantiation requirements of section 274(d). Petitioners have the burden of proof, yet they provided no testimony or other evidence to substantiate the business purposes of the expense deductions claimed for Mrs. Robinson's vehicle. Accordingly, we conclude that they have failed to prove that they are entitled to those deductions, and we therefore sustain respondent's disallowance of them.

It is unclear from the record how petitioners arrived at the remainder of the expenses they reported for Mrs. Robinson on their Schedule A. Except for invoices from Chrysler Financial and a single receipt from an auto mechanic, petitioners provided no receipts to substantiate the $27,821 in unreimbursed employee business expenses petitioners claimed that Mrs. Robinson incurred during 2004. Instead, petitioners provided a list of uncategorized expenses, culled from credit card statements, totaling $2,024.25. During her testimony Mrs. Robinson explained that three of the charges listed were for visits to tourist attractions: The Metropolitan Museum of Art; the Philadelphia Museum of Art; and the Easton Town Center in Ohio, which Mrs. Robinson explained was a "lifestyle center" that demonstrated the direction retail had taken in the last decade. Mrs. Robinson explained that she made visits to tourist attractions to look for ideas or business opportunities that she might employ in her own business, an activity she labeled "benchmarking". Although Mrs. Robinson believed such "benchmarking" excursions were important for developing her business, her employer would not reimburse her for them, and they had to be conducted on her personal time. Mrs. Robinson did not testify about or otherwise explain any of the other unreimbursed employee business expenses she deducted for 2004.

To substantiate Mrs. Robinson's reported unreimbursed employee business expenses of $30,000 for 2005, petitioners supplied invoices and canceled checks from Chrysler Financial for their payments on the Sebring and 46 uncategorized receipts totaling $4,270.63. Many of the receipts are from restaurants, yet petitioners reported no expenses for meals and entertainment on Mrs. Robinson's Schedule A for 2005. Other receipts show expenses for parking, airplane tickets, and retail items, including two purchases of doll clothes at American Girl Place in New York. The largest receipt is from a hotel stay at Disney's Grand Californian Hotel at Disneyland in Anaheim, California. Petitioners also included receipts for tickets to Disneyland and receipts from a visit to Disney World in Orlando, Florida. During her testimony, Mrs. Robinson explained that she makes an annual trip to Disney World to "see what's going on". While there, she visits all of the theme parks to compare the newest attractions and look at Disney's retail establishments. Mrs. Robinson took these trips during 2005 accompanied by Mr. Robinson and their daughter. On at least one of the trips they were also accompanied by Mrs. Robinson's mother and Mr. Robinson's mother. Nonetheless, petitioners claimed that all of the expenses from those trips were unreimbursed employee business expenses because they were important "benchmarking" excursions for Mrs. Robinson's job.

If a trip is primarily personal, expenses are not deductible even if the taxpayer engaged in some business activities at the destination. Sec. 1.162-2(b)(1), Income Tax Regs. Whether travel is primarily related to the taxpayer's trade or business or is primarily personal is a question of fact. Sec. 1.162-2(b)(2), Income Tax Regs.; see also Holswade v. Commissioner, 82 T.C. 686, 698, 701 (1984). The amount of time spent on personal activity during the trip compared with the amount of time spent on activities directly relating to the taxpayer's trade or business is an important factor in determining whether the trip is primarily personal. Sec. 1.162-2(b)(2), Income Tax Regs. The taxpayer must prove that the trip was primarily related to the trade or business. Rule 142(a).

Petitioners have failed to show that Mrs. Robinson's trips to visit tourist attractions around the country were ordinary and necessary for her employment. See sec. 162(a). Moreover, the facts suggest that the primary purpose of her trips was personal pleasure: she was always accompanied by other family members and she took vacation time to make the trips. The mere fact that Mrs. Robinson may have garnered some business ideas on her visits to tourist attractions does not permit her to deduct the costs of those trips as unreimbursed employee business expenses. Accordingly, we sustain respondent's disallowance of all expenses

associated with those trips during the years in issue.  Because we understand petitioners to be claiming that all of Mrs. Robinson's unreimbursed employee business expenses relate to her "benchmarking" excursions, the disallowance of those expenses dispenses with all of the unreimbursed employee business expenses claimed by Mrs. Robinson.

    C.    Schedule A Deductions for Mr. Robinson's Expenses

Petitioners also claimed unreimbursed employee business expense deductions for Mr. Robinson on their Schedules A for the years in issue in the following amounts:

| Expense | 2004 | 2005 |
|---|---|---|
| Vehicle expense | --- | $262 |
| Parking fees, tolls, and transportation | $380 | 324 |
| Travel expenses | 390 | 189 |
| Other business expenses | 465 | 1,707 |
| Meals and entertainment | --- | 160 |
| Total | 1,235 | 2,642 |

Petitioners offered no documents, testimony, or other evidence to substantiate Mr. Robinson's Schedule A expenses.  Accordingly, petitioners have failed in their burden of proof, and we therefore sustain respondent's disallowance of all such expenses for the years in issue.

    D.    Schedule A Deductions for Tax Preparation Expenses

Petitioners also claimed tax preparation expenses of $70 and $75 for their 2004 and 2005 tax years, respectively.  However, they did not provide any receipts to substantiate those expenses.

Accordingly, petitioners have failed in their burden of proof and we therefore sustain respondent's disallowance of their tax preparation expense deductions.

IV. <u>Whether Petitioners Are Liable for Additions to Tax Under Section 6651(a)(1) for Failure To File Timely Returns</u>

Section 6651(a)(1) provides for an addition to tax where a failure to file a Federal tax return timely is not due to reasonable cause or is due to willful neglect. Pursuant to section 7491(c), the Commissioner generally bears the burden of production for any penalty, but the taxpayer bears the ultimate burden of proof. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).

Petitioners do not dispute that they were late in filing their tax returns for the years in issue. Consequently, respondent has met his burden of production under section 7491(c), and in order to avoid the section 6651(a)(1) addition to tax, petitioners have the burden of establishing reasonable cause and the absence of willful neglect for failure to file timely. See <u>Calloway v. Commissioner</u>, 135 T.C. 26, 45 (2010); <u>Gates v. Commissioner</u>, 135 T.C. 1, 14 (2010).

Petitioners contend that their failure to file timely is due to reasonable cause because they were awaiting a decision in a prior dispute before the Tax Court regarding Mr. Robinson's status as an independent contractor. However, the stipulated decision in that case was entered on November 2, 2004, and

petitioners' tax returns for the years in issue were not due until April 15, 2005, and April 17, 2006. Petitioners offered no other explanation for why they filed their returns late. Accordingly, we conclude that petitioners have failed in their burden of proof, and we therefore sustain respondent's determination of the addition to tax under section 6651(a)(1) against petitioners for their failure to file timely returns.

V.    Whether Petitioners Are Liable for Accuracy-Related
      Penalties Pursuant to Section 6662(a)

Section 6662(a) imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b). Subsection (b) applies the penalty to any underpayment attributable to, inter alia, a "substantial understatement of income tax" or "Negligence or disregard of rules or regulations."

There is a "substantial understatement" of income tax for any tax year where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the tax year or $5,000. Sec. 6662(d)(1)(A). However, the amount of the understatement may be reduced by any portion of the understatement attributable to any item for which there was substantial authority for the taxpayer's treatment, or with respect to which the relevant facts were adequately disclosed on the taxpayer's return and there was a reasonable basis for the taxpayer's treatment. Sec. 6662(d)(2)(B).

Section 6662(a) and (b)(1) also imposes a penalty for negligence or disregard of rules or regulations. Under section 6662(c), "negligence" is "any failure to make a reasonable attempt to comply with the provisions of this title". We have defined negligence as "a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances." Bunney v. Commissioner, 114 T.C. 259, 266 (2000). Failure to maintain adequate books and records or to substantiate items properly constitutes negligence. Sec. 1.6662-3(b)(1), Income Tax Regs. A taxpayer is considered to have disregarded rules or regulations even if such disregard is "careless," meaning that the taxpayer "does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation." Sec. 1.6662-3(b)(2), Income Tax Regs.

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, supra at 446. To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, supra at 446. The Commissioner has the burden of production only; the ultimate burden of proving that the penalty is not applicable remains on the taxpayer. Id.

Respondent contends that petitioners are liable for the penalty pursuant to section 6662 both because they substantially understated their income tax and because they were negligent. Petitioners understated their tax liabilities by $7,965 and $9,634 for their 2004 and 2005 tax years, respectively. The amount by which they understated their tax liability for each year exceeds both: (1) 10 percent of the amount required to be shown on their return for each year ($1,925.20 and $2,858.30, respectively); and (2) $5,000. Petitioners have the burden of proof regarding whether any portion of either understatement should be reduced pursuant to section 6662(d)(2)(B), but they did not address the issue or present any evidence showing that their understatements should be reduced. Accordingly, we conclude that petitioners have failed in their burden of proof, and we therefore hold that petitioners are liable for the section 6662 penalty for both years for substantially understating their income tax. See sec. 6662(d). Because we decide petitioners are liable for the section 6662 penalty on account of their substantial understatements of their tax liabilities for both years, we need not consider whether they were also negligent.

In reaching the foregoing holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.