T.C. Summary Opinion 2011-84

UNITED STATES TAX COURT

LESTER DALE ANDERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9042-10S.                    Filed July 6, 2011.

Lester Dale Anderson, pro se.

<u>Anna A. Long</u>, for respondent.

JACOBS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.

Respondent determined a deficiency of $4,472 in petitioner's Federal income tax and an addition to tax under section 6651(a)(1) of $861.75 for 2005.  After concessions by respondent, the issues remaining for decision are:  (1) Whether petitioner is entitled to deduct any of the medical expenses claimed on Schedule A, Itemized Deductions, of his 2005 income tax return remaining in dispute; (2) whether petitioner is entitled to deduct any of the charitable contributions claimed on Schedule A of his 2005 income tax return; (3) whether petitioner is entitled to deduct any of the miscellaneous expenses claimed on Schedule A of his 2005 income tax return; and (4) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1).

All section references are to the Internal Revenue Code in effect for 2005, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in California when the petition was filed.

I.  Introduction

Petitioner has worked as a procurement agent for numerous manufacturing companies throughout his career.  However, in 2005 he was unemployed from January through June.  Throughout this

period, petitioner sought permanent employment.  Petitioner filed a claim for unemployment benefits with the State of California on March 27, 2005.

Petitioner filed his 2005 Form 1040, U.S. Individual Income Tax Return, on May 19, 2008, more than 2 years after it was due, computing his tax using a filing status of "Married filing separately".  Petitioner claimed an exemption for his wife. Petitioner's wife did not file a tax return for 2005.[1]

Petitioner did not file Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, and the record does not indicate that he otherwise requested an extension of time to file his 2005 income tax return.

Respondent disputes three deductions that petitioner claimed on Schedule A of his 2005 income tax return.  The first of the disputed deductions is $15,749 in medical expenses incurred for petitioner's and petitioner's wife's medical treatments. Respondent now concedes $11,456 of these medical expenses.  The second disputed deduction is $7,660 in charitable contributions. The third involves $7,538 of miscellaneous expenses related to petitioner's search for permanent employment.  The relevant facts relating to the disputed deductions follow.

---

[1]Petitioner's wife is disabled and receives nontaxable disability and Social Security benefits.

II.  Petitioner's Medical Expenses

On Schedule A of his 2005 income tax return, petitioner deducted $15,749 in unreimbursed medical expenses for both himself and his wife.  Respondent initially disallowed the entire deduction, but after reviewing petitioner's documentation he conceded $11,456 of the claimed medical expenses.  At trial petitioner informed the Court that he was in contact with insurance companies to procure additional documentation with respect to his wife's medical expenses for 2005.  The Court agreed to keep the record open for 30 days to permit petitioner to submit additional documentation.  Petitioner ultimately provided a document from Prescription Solutions detailing his wife's prescriptions in 2005 totaling $796.60.  Concurrently with the submission of this document, petitioner claimed an additional deduction for medical-related mileage totaling $211.12 (520 miles driven at 40.6 cents per mile).

III.  Charitable Contributions

Petitioner deducted $7,660 for charitable contributions with respect to donations to two organizations.  The first of these donations (noncash donations) relates to books, clothing, and drapes petitioner gave to AMVETS Service Foundation (AMVETS).  At trial petitioner submitted a receipt from AMVETS for:  (1) "Bags of Clothing"; (2) "Miscellaneous"; (3) "Drapes"; and (4)

"Other".[2]  In addition, petitioner submitted a list (prepared in 2008) setting forth values which he had assigned to the noncash donations, as follows:

| Item | Quantity | Value of Each Item Assigned by Petitioner | Total Value |
|---|---|---|---|
| Craftmaking books | 52 books | $30 | $1,560 |
| Other hardback books | 44 books | 10 | 440 |
| Clothing | 14 bags | 40 | 560 |
| Drapes & drapery rod | 1 set | 100 | 100 |
| Miscellaneous | 1 | 200 | 200 |

The craftmaking books were given to petitioner by his sister-in-law, who had collected them over a 25-year period.[3] Petitioner and/or his wife had purchased the remaining items donated, but he presented no receipts or other documentation as to their costs.

The second donation relates to cash contributions petitioner allegedly made to his church totaling $4,800.  Petitioner avers that each time he attended church services he put "about $100"

___

[2]The AMVETS Service Foundation receipt includes a disclaimer which states that "AMVETS is not required to value the property it receives from the donor.  I.R.S. Code places the responsibility for estimating the 'fair market value' upon the donor."

[3]Petitioner had previously attempted to sell the books but was unable to do so.  Therefore, he decided to donate the books to charity.

cash into the collection basket.  Petitioner asked his minister to give him a letter corroborating the amounts of his contributions, but the minister declined to do so, stating:  "I don't think it would be the best thing to do."

IV.  Miscellaneous Expenses

Petitioner actively searched for a permanent job during his period of unemployment (January to June) in 2005.  He ultimately found temporary employment following the period in which he was unemployed.

On Schedule A of his 2005 income tax return, petitioner deducted $7,538 in miscellaneous expenses.  These expenses consisted of the following:

| Item | Monthly Amount | No. of Months | Total |
|------|---------------|---------------|-------|
| Cellular telephone | $43.80 | 12 | $526 |
| Newspaper | 10.00 | 12 | 120 |

In addition, petitioner claimed mileage expenses of $6,677 with respect to his job search (16,486 miles driven at 40.5 cents per mile).[4]  No documentation corroborating any of the miscellaneous expenses was submitted.

The cellular telephone expenses petitioner deducted were an estimate of the portion of his telephone bill that were job-

---

[4]We are mindful that the aforementioned miscellaneous expenses total $7,323, not $7,538.  No explanation for the $215 difference was given.

search related calls.  At trial he acknowledged that he "probably overstated the estimate for cell phone" expenses.

The newspaper expenses deducted relate to the monthly charges petitioner incurred for newspaper delivery.  Petitioner maintains he reviewed the want-ads for job opportunities and pursued all promising job openings.  He claims he read the newspapers not for their news content, but rather for the want-ads.

Petitioner did not keep a log detailing the mileage for each job-seeking trip or listing the nature of each trip, and he admitted error in calculating the specific mileage.  He stated that he had actually driven 6,486 miles, which at 40.5 cents per mile would reduce the amount claimed for job search mileage to $2,627.

### Discussion

It is well established that deductions are a matter of legislative grace, and taxpayers bear the burden of proving they are entitled to all deductions claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Moreover, taxpayers must substantiate the amount and purpose of the item deducted. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Taxpayers are required to maintain records that are sufficient to enable the Commissioner

to determine their correct tax liability. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs. Under certain circumstances, if a taxpayer establishes entitlement to a deduction but not the amount, the Court may estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We generally will not estimate a deductible expense unless the taxpayer presents sufficient evidence to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) supersedes the Cohan doctrine for certain categories of expenses. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Generally, a deduction is disallowed for travel expenses, meals and entertainment, and listed property unless the taxpayer properly substantiates: (1) The amount of the expense; (2) the time and place of the expense; (3) the business purpose of the expense; and (4) in the case of meals and entertainment (not relevant here), the business relationship between the taxpayer and the persons being entertained. Sec. 274(d). Listed property includes passenger automobiles, sec. 280F(d)(4)(A)(i), and cellular telephones, sec. 280F(d)(4)(A)(v). Generally, deductions for expenses subject to the strict substantiation requirements of section 274(d) must be disallowed in full unless

the taxpayer satisfies every element of those requirements.
Sanford v. Commissioner, supra at 827-828; Robinson v.
Commissioner, T.C. Memo. 2011-99; sec. 1.274-5T(a), Temporary
Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).
Contemporaneous logs are not required, but corroborative evidence
to support a taxpayer's reconstruction of the elements of an
expenditure or use must have "a high degree of probative value to
elevate such statement" to the level of credibility of a
contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income
Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Deductions for listed property used for both personal and
business purposes are disallowed unless the taxpayer establishes
the amount of business use of the property.  Robinson v.
Commissioner, supra; Olsen v. Commissioner, T.C. Memo. 2002-42,
affd. 54 Fed. Appx. 479 (9th Cir. 2003); sec. 1.274-
5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016
(Nov. 6, 1985).

I.  Petitioner's Medical Expenses

A taxpayer may deduct medical expenses not compensated for
by insurance or otherwise for himself or herself, his or her
spouse, or a dependent as defined in section 152.  Sec. 213(a).
Respondent concedes that petitioner is entitled to $11,456 of the
claimed $15,749 of medical expenses for 2005.  With respect to
the remaining $4,293, as stated supra p. 4, petitioner produced

documentation sufficient to substantiate an additional $796.60 of medical expenses.

With respect to petitioner's claimed medical automobile mileage, petitioner has not satisfied the heightened substantiation requirements of section 274(d). We therefore sustain respondent's disallowance of the deduction.

In sum, petitioner is entitled to deduct medical expenses of $12,252.60 for 2005.

## II. Charitable Contributions

Petitioner claimed a charitable contribution deduction of $7,660 on Schedule A of his 2005 income tax return.

In general, section 170(a) allows a deduction for any charitable contribution the payment of which is made within the taxable year. Charitable contributions, however, are deductible only if verified under regulations prescribed by the Secretary. Sec. 170(a)(1); Hewitt v. Commissioner, 109 T.C. 258, 261 (1997), affd. without published opinion 166 F.3d 332 (4th Cir. 1998).

### A. Cash Contribution to Petitioner's Church

Section 1.170A-13(a), Income Tax Regs., provides that if a taxpayer makes a cash contribution, he shall maintain for each contribution one of the following: (i) A canceled check; (ii) a receipt from the donee; or (iii) other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution. Petitioner maintained none of

these records.  Because petitioner did not substantiate his cash
contributions, we sustain respondent's disallowance of the
deduction.

B.  Noncash Contribution to AMVETS

For charitable contributions made in property other than
cash, the value of the contribution is the fair market value at
the time of contribution.  Hewitt v. Commissioner, supra at 261;
sec. 1.170A-1(c)(1), Income Tax Regs.  The fair market value of
contributed property is the price at which the property would
change hands between a willing buyer and a willing seller,
neither being under any compulsion to buy or sell and both having
reasonable knowledge of relevant facts.  Sec. 1.170A-1(c)(2),
Income Tax Regs.

In general, for noncash charitable contributions, a taxpayer
must maintain for each contribution a receipt from the donee
showing the name of the donee, the date and location of the
contribution, and a description of the donated property in detail
reasonably sufficient under the circumstances.  See sec. 1.170A-
13(b)(1), Income Tax Regs.

Petitioner provided no documentation describing the
contributed property beyond referring to the noncash
contributions as "lace books" (i.e., the craftmaking books),
"hardback books", bags of clothing, drapes and drapery rod, and
"miscellaneous".  The reliability of the list of property

petitioner donated to AMVETS is weakened by the fact it was prepared in 2008, not 2005.  Moreover, it appears that in many cases (e.g., the craftmaking books) petitioner's valuations are high.  And petitioner candidly admitted that the valuation for the property contributed was simply a "fair number" that he "arbitrarily" estimated.  Consequently, we are unable to determine or estimate with any degree of certainty the correct value of the noncash property petitioner donated to AMVETS.  We therefore sustain respondent's disallowance of the deduction.

III.  <u>Miscellaneous Expenses</u>

Miscellaneous expenses are deductible to the extent they are allowable and exceed 2 percent of adjusted gross income.  Sec. 67(a).  Miscellaneous expenses include job-seeking expenses so long as the taxpayer seeks employment in his current trade or business and the expenses are directly connected with the trade or business.  Secs. 67(b), 162; Rev. Rul. 77-16, 1977-1 C.B. 37.

A.  <u>Newspaper Expenses</u>

Petitioner deducted newspaper expenses of $120, asserting that he purchased the newspapers solely to assist in his job search.  Section 262(a) disallows a deduction for personal, living, or family expenses.  The taxpayer bears the burden of proving that an expense was for business or income-producing purposes rather than for personal reasons.  <u>Walliser v. Commissioner</u>, 72 T.C. 433, 437 (1979).

The purchase of general circulation newspapers is a personal expense that taxpayers may not deduct. Stemkowski v. Commissioner, 690 F.2d 40, 47 (2d Cir. 1982), affg. in part and revg. in part 76 T.C. 252 (1981). We therefore sustain respondent's disallowance of the deduction for newspaper expenses.

B. Cellular Telephone and Automobile Expenses

As noted supra p. 8, cars and trucks and cellular telephones are "listed property" pursuant to section 280F(d)(4)(A)(i) and (v), respectively.

With respect to petitioner's cellular telephone expenses, petitioner did not present his telephone bills or any other documents evidencing that the expenses were incurred. Further, he did not present any evidence to demonstrate the business purpose of the expenses. Moreover, petitioner admitted at trial that the estimate he used on his self-prepared list was incorrect. At trial he said the monthly cost was "probably around $25". However, that, too, was only a guess. We do not doubt that petitioner used his cellular telephone to assist in his job hunt, but petitioner's testimony alone is not sufficient to meet the requirements of section 274(d).

With respect to petitioner's automobile mileage deductions, again petitioner failed to demonstrate the business purpose of the automobile use or distinguish between his personal use vis-a-

vis business use of the automobile. Moreover, petitioner's list contained, by his own admission, numerous errors, and is not an adequate record within the purview of section 274(d). Again, we do not doubt that petitioner used his car in his job search, but his testimony is not sufficient to meet the requirements of section 274(d).

We therefore sustain respondent's denial of petitioner's cellular telephone and automobile expense deductions.

IV.  Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to timely file an income tax return unless the failure to file is due to reasonable cause and not willful neglect. This addition to tax consists of adding to the amount required to be shown as tax on the return 5 percent of the amount of such tax for each complete or partial month in which the failure to file continues, up to a maximum of 25 percent in the aggregate. Id. Respondent has the burden of production pursuant to section 7491(c). To satisfy that burden, respondent must produce sufficient evidence demonstrating that it is appropriate to impose the addition to tax. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent has met his burden of production, petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect. Id. at 447.

Respondent has satisfied his burden of production. The record clearly reflects that petitioner did not timely file his 2005 income tax return. And petitioner has not demonstrated that his failure to timely file his 2005 income tax return was due to reasonable cause and not due to willful neglect.[5]

At trial petitioner candidly admitted that he would not file Federal income tax returns if he believed he was due a refund. "If they owe me money, I don't file." Petitioner believed that he was owed a refund in 2005; hence he did not file a tax return for 2005. However, by 2008, petitioner's wife convinced him to file a tax return for 2005. As it happened, respondent, upon reviewing the late-filed tax return, determined that petitioner had a deficiency in tax, which according to petitioner, "dumbfounded" him.

Petitioner has not demonstrated reasonable cause for the delay in filing his 2005 Federal income tax return. He is therefore liable for the section 6651(a)(1) addition to tax.

To reflect concessions, and to take into account the additional $796.60 of medical expenses petitioner substantiated,

---

[5]Reasonable cause requires a taxpayer to demonstrate that he exercised ordinary business care and prudence but nonetheless was unable to file a return within the prescribed time. United States v. Boyle, 469 U.S. 241, 245-246 (1985); Bruner v. Commissioner, T.C. Memo. 1998-246.

respondent must recompute both the tax deficiency and the
addition to tax for 2005.[6]

Decision will be entered

under Rule 155.

---

[6]When petitioner submitted posttrial medical expense
documentation, he requested that his filing status for 2005 be
changed from married filing separately to married filing jointly.
While a taxpayer in general may change his filing status, this
change may not be made after the Commissioner has mailed a notice
of deficiency to either spouse and there has been a timely filing
of a petition in this Court with respect to the notice.  Sec.
6013(b)(2)(B).  Moreover, petitioner provided no evidence that
his wife intended to file jointly with him for 2005.  See, e.g.,
Etesam v. Commissioner, T.C. Memo. 1998-73.